# 21-2419-cr

## In the United States Court of Appeals
## for the Second Circuit

United States of America,

*Appellee,*

v.

JOSEPH BONGIOVANNI, MICHAEL MASECCHIA,

*Defendants,*

Peter Gerace, Jr.,

*Defendant-Appellant*

On Appeal from the United States District Court
For the Western District of New York

**BRIEF FOR APPELLEE
UNITED STATES OF AMERICA**

TRINI E. ROSS
United States Attorney
*Attorney for Appellee*
United States Attorney's Office
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5827

KATHERINE A. GREGORY
Assistant United States Attorney
*of Counsel*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................ii

STATEMENT OF JURISDICTION.................................................................... 1

COMBINED STATEMENT OF THE CASE AND FACTS ......................... 2

    A.  Background .................................................................................. 2

    B.  Criminal Indictments ................................................................ 3

    C.  The Injunction ........................................................................... 5

STATEMENT OF THE ISSUE ......................................................................... 9

SUMMARY OF THE ARGUMENT ............................................................... 9

ARGUMENT........................................................................................................ 10

The District Court's Acceptance of the Government's Motion *Ex Parte* and The Issuance of an Injunction Pursuant to the All Writs Act Were Within Its Discretion. ............................................................................................................ 10

  A.  Governing Law and Standard of Review ............................................ 10

    1.  Decision to Proceed *Ex Parte* ............................................................ 10

    2.  The All Writs Act .................................................................................. 10

  B.  Discussion ................................................................................................. 12

    1.  The district court did not abuse its discretion in issuing the injunction, where the Anti-Injunction Act does not apply to suits brought by the United States or, alternatively, the action is permitted under the Anti-Injunction Act as "expressly authorized by Congress.". .................... 12

    2.  The district court's decision to hear the motion *ex parte* was appropriate because the motion was supported by grand jury materials. .............. 15

CONCLUSION ..................................................................................................... 17

i

# TABLE OF AUTHORITIES

## Cases

*In re Grand Jury Subpoena*, 866 F.3d 231 (5th Cir. 2017) ................................. 11

*Leiter Minerals, Inc. v. United States*, 352 U.S. 220 (1957) ...........................11, 12

*Mitchum v. Foster*, 407 U.S. 225 (1972)....................................................12, 14

*NLRB v. Nash-Finch Co.*, 404 U.S. 138 (1971).................................................. 11

*NLRB v. Nash-Finch Co.*, 404 U.S. 138, 145-47 (1971 ..................................... 12

*Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34 (1993) ......................... 12

*Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d 419 (2d Cir. 2004).......... 11

*Trump v. Vance*, 941 F.3d 631 (2d Cir. 2019).................................................. 11

*United States v. Abu-Jihaad*, 630 F.3d 102 (2d Cir. 2010)...........................10, 13

*United States v. Al-Farekh*, 956 F.3d 99 (2d Cir. 2020)..................................... 10

*United States v. Arillotta*, 529 F. App'x 81 (2d Cir. 2013) ................................. 10

*United States v. Lemaire*, 826 F.2d 387 (5th Cir. 1987) .................................... 11

*United States v. Schurkman*, 728 F.3d 129 (2d Cir. 2013)................................. 11

*United States v. Smith*, 985 F. Supp.3d 506 (S.D.N.Y. 2013)............................ 10

*United States v. Tison*, 780 F.2d 1569 (11th Cir. 1986) .................................... 14

*Wyly v. Weiss*, 697 F.3d 131 (2d Cir. 2012) ................................................... 12

## Statutes

18 U.S.C. § 1514 ............................................................................. 12, 13, 14

18 U.S.C. § 1594(c) ................................................................................. 1

18 U.S.C. § 201(b)(1)(A) ......................................................................... 1

18 U.S.C. § 201(b)(1)(C) ......................................................................... 1

18 U.S.C. § 3231 ..................................................................................... 1

18 U.S.C. § 371 ...................................................................................... 1

21 U.S.C. § 846 ...................................................................................... 1

21 U.S.C. § 856(a)(1) ............................................................................. 1

28 U.S.C. § 1292 .................................................................................... 1

28 U.S.C. § 1651(a) .............................................................................. 11

28 U.S.C. § 2283 ............................................................................. 11, 13

## Rules

FED. R. CRIM. P. 16(d)(1) ...................................................................... 5, 10

iii

## STATEMENT OF JURISDICTION

The district court (Sinatra, J.) has jurisdiction pursuant to 18 U.S.C. § 3231, by reason of a Second Superseding Indictment charging Defendant-Appellant Peter Gerace, Jr. and others with Conspiracy to Defraud the United States, Paying a Bribe to a Public Official, Maintaining a Drug-Involved Premises, Conspiracy to Distribute Controlled Substances, and Conspiracy to Commit Sex Trafficking, all in violation of 18 U.S.C. §§ 371, 201(b)(1)(A), 201(b)(1)(C), and 1594(c), as well as 21 U.S.C. §§ 846 and 856(a)(1). (GA[1] 38-83) (Second Superseding Indictment). On April 29, 2021, the district court issued an order enjoining Gerace's New York State civil defamation suit from proceeding. (CA 1-2). On June 21, 2021, Gerace moved to vacate the district court's order (CA 3-85), which the government opposed (CA 86-93). On September 10, 2021, the district court denied Gerace's motion to vacate. (GA 120-29) (Decision and Order).

Gerace filed a timely notice of interlocutory appeal on September 24, 2021. (GA 27). This Court has jurisdiction pursuant to 28 U.S.C. § 1292.

---

[1] References to "CA" are to pages in the Confidential Appendix filed by Gerace with his brief, to "GA" are to pages in the Government's Appendix filed with this brief, and "DE" are to Docket Entries in the district court matter, W.D.N.Y. Case No. 1:19-cr-227.

## COMBINED STATEMENT OF THE CASE AND FACTS

Gerace appeals the denial of his motion to vacate the injunction against his New York State civil lawsuit, asserting that the district court abused its discretion when it issued the injunction.

### A. Background

Gerace is the subject of a Second Superseding Indictment alleging his multi-year involvement in corrupt conduct perpetrated by former Drug Enforcement Administration ("DEA") Special Agent Joseph Bongiovanni. (*See, e.g.,* GA 38-83) (Second Superseding Indictment). Bongiovanni allegedly used his position to dissuade fellow law enforcement officers from conducting investigations into his friends, associates, co-conspirators, and organized crime syndicates, in exchange for payments and/or to ingratiate himself to individuals whom he believed to be members of organized crime. (GA 42, ¶ 5). Gerace, the owner and operator of Pharaoh's Gentlemen's Club ("Pharaoh's"), is alleged to be one such associate. (GA 39, ¶ 4; GA 57, ¶¶ 7-8).

Gerace purportedly paid Bongiovanni cash bribes to protect himself and Pharaoh's from federal investigation. (GA 57, ¶¶ 9-12; GA 58-59, ¶¶ 17-22). Bongiovanni allegedly lied to fellow officers, claiming that Gerace was a confidential DEA source in order to disguise Gerace's conduct and his communication with Gerace, and to dissuade law enforcement from

2

investigating Gerace. (GA 59, ¶¶ 20-22). On one occasion, Bongiovanni is alleged to have contacted the U.S. Probation Office to intercede on Gerace's behalf after Gerace violated the conditions of his federal supervised release. (GA 59, ¶ 19). Gerace also purportedly contacted Bongiovanni after one of the Pharaoh's strippers overdosed, at which point Bongiovanni directed him to "get her out" of the club. (GA 60, ¶ 26). On another occasion, Gerace left a voice message on Bongiovanni's DEA-issued cell phone asking whether police could track a drug dealer's Trackfone; Bongiovanni responded, "Yes but you would need a warrant to get a ping order." (GA 61, ¶ 27).

## B. Criminal Indictments

Between April and December of 2019, Gerace's phone was searched and federal law enforcement executed search warrants at Bongiovanni's residence, Gerace's residence, and Pharaoh's Gentlemen's Club. (GA 87-89). Bongiovanni was indicted in October 2019; the indictment was unsealed in November 2019. (GA 6).

On June 4, 2020, the grand jury issued a Superseding Indictment. (GA 10). While Gerace was not named directly, the Superseding Indictment described: "Coconspirator 1" as the owner of a gentlemen's club in Cheektowaga, New York, who paid bribes to Bongiovanni to protect his business from drug investigations; the contact Bongiovanni had with the U.S.

3

Probation Office to intercede on "Coconspirator 1's" behalf after he had violated the terms of his supervised release; the incident in which a stripper who worked at "Coconspirator 1's" gentlemen's club overdosed and Coconspirator 1 called Bongiovanni; the voice message left by "Coconspirator 1" asking about whether drug dealers' phones could be traced; and other specific incidents involving Coconspirator 1. (DE 46).

Just a few months after the Superseding Indictment was filed, on October 9, 2020, Gerace filed a New York state civil action against ██████████ ██████████ (CA 17-37). The alleged objectionable conduct with respect to ██████ involved primarily a Facebook post that occurred four years prior (CA 19), a disputed harassment incident that occurred four years prior (CA 24), and a disputed police complaint from four years prior (CA 28), while the allegations against ██████ vaguely described her "delivery of false information to the FBI" as an abuse of process (CA 35). The complaint did not explain why Gerace brought a single civil suit against these ██████ ██████████ for what is alleged to be discrete conduct. The government contends that Gerace believes these individuals are grand jury witnesses.

In sealed proceedings in December 2020, the government sought an *ex parte* injunction staying Gerace's state court proceeding, which the district court

4

(Arcara, J.) granted. The injunction was extended on January 28, 2021. Gerace never moved to lift either the original December 2020 injunction or its extension.

On February 25, 2021, the Second Superseding Indictment was filed naming Gerace in place of "Coconspirator 1" and, with respect to Gerace, describing largely the same conduct verbatim as was outlined in the Superseding Indictment. (*Compare* DE 46 *with* DE 89).

## C. The Injunction

In accordance with FED. R. CRIM. P. 16(d)(1), and in line with the previous injunctions granted by the district court, on April 23, 2021, the government again moved the district court *ex parte* to enjoin the New York State civil action. (DE 114, 115).[2] The government presented argument on April 29, 2021, at which point the district court granted the motion and enjoined the New York state civil action from proceeding. (CA 1-2).

As part of its order, the district court instructed the government to move to vacate the injunction within 30 days of the conclusion of the criminal case as to Gerace. (*Id.*).

---

[2] This Court may, of course, review the materials that the Government had submitted to the District Court *ex parte* and under seal. *Cf. United States v. Yousef*, 327 F.3d 56, 168 (2d Cir. 2003). Upon request, the Government will provide additional copies of the sealed material to this Court.

On June 16, 2021, Gerace moved to vacate the injunction. (CA 3-85). In opposition, and in addition to the affidavit and exhibits in support of its motion, the government argued that allowing the state court action to proceed would frustrate the federal criminal process as it relates to crime victims' rights, compromise grand jury secrecy, and provide the defense with premature discovery, while a temporary injunction of that process would cause no prejudice to Gerace. (GA 86, 89-90). The government proffered that during the investigation and various indictments, "witnesses have reported being or feeling threatened by Mr. Gerace and/or associates of Mr. Gerace." (GA 89-90). The government also argued that the lawsuit was not a genuine attempt to redress defamation, but a ploy to circumvent federal discovery processes and stifle witness cooperation. (GA 90).

Gerace protested at length that the government had proceeded *ex parte*, but offered little explanation as to how he would be prejudiced by the temporary injunction. (DE 130). At argument, the district court drilled down on the prejudice Gerace believed he would suffer:

THE COURT: […] Why can't the civil lawsuit wait?

MR. COHEN: Well --

THE COURT: What's the prejudice?

6

MR. COHEN: He's been going after ▇▇▇▇▇▇ for eight years now, trying to get ▇ to stop. And by the way --

THE COURT: Well, he's not – he's not going to get an injunction, is he?

MR. COHEN: Yeah. That's what he's seeking. Take a look at addendum. He is seeking a permanent injunction.

THE COURT: Right. So the State court judge is going to give you an injunction of future speech --

MR. COHEN: Yes.

THE COURT: -- is what you are contending?

MR. COHEN: Of future defamatory speech. That's what I'm seeking, Judge.

THE COURT: Okay.

MR. COHEN: That's – I'm seeking the injunctive relief. Yes. […]

THE COURT: Well, Mr. Cohen -- Mr. Cohen, you're a First Amendment lawyer. You know that that -- getting an injunction of future speech is one of the hardest things to get, isn't it?

MR. COHEN: I'm tenacious, Your Honor.

(GA 115-16). Gerace proffered nothing in support a claim of prejudice if his claims against ▇▇▇▇▇ were temporarily delayed.

Under the auspices of the All Writs Act, the district court carefully balanced "the private parties' interest in a prompt resolution of the civil matter with the government's interest in preserving the integrity of criminal

7

proceedings, with the goal of avoiding prejudice." (GA 124) (internal quotation omitted). The district court explained that the government provided "numerous reasons in support of the injunction," as well as "specific facts" supporting its request. (GA 125). Broadly speaking, however, those reasons included: (1) protecting witnesses from threats and intimidation; (2) preserving grand jury secrecy; and (3) enforcing the federal criminal discovery rules. (*Id.*). The district court noted that while Gerace claimed he commenced the state action before he was indicted, he had certainly become aware of the investigation by December 2019. (GA 126). The district court also concluded that it was proper to proceed *ex parte* where grand jury materials were involved, the injunction had no effect on Gerace's liberty or his criminal case "beyond ensuring that his case proceeds in the ordinary course," and Gerace had an opportunity to seek relief from the order. (GA 128-29). Accordingly, the district court declined to disturb the temporary injunction.

This appeal followed.

8

**STATEMENT OF THE ISSUE**

Whether the district court abused its discretion when, upon *ex parte* motion by the government, it enjoined Gerace's New York state civil action against two alleged witnesses, which Gerace only initiated four years after the defamatory events when he became aware of the federal investigation.

**SUMMARY OF THE ARGUMENT**

This Court should affirm the district court's order enjoining Gerace's New York State civil action from proceeding while the criminal case is pending. First, there was no impropriety in proceeding *ex parte* because the materials supporting the government's motion included grand jury transcripts, which the government is generally prohibited from disclosing and which are particularly sensitive in light of ongoing investigations. Second, the district court acted within its discretion in enjoining Gerace's civil action because of the interest in (1) protecting witnesses from threats and intimidation; (2) preserving grand jury secrecy; and (3) enforcing federal criminal discovery rules, while Gerace could articulate no prejudice he would suffer if his civil suit were temporarily delayed.

This case presents no basis to disturb the district court's weighing of the parties' interests, and the Court should affirm the order temporarily enjoining Gerace's civil action from proceeding.

9

## ARGUMENT

**The District Court's Acceptance of the Government's Motion *Ex Parte* and The Issuance of an Injunction Pursuant to the All Writs Act Were Within Its Discretion.**

**A.    Governing Law and Standard of Review**

**1.  Decision to Proceed *Ex Parte***

A district court may accept filings *ex parte* "for good cause" shown. FED. R. CRIM. P. 16(d)(1). It is well-settled that *ex parte* review "can be an appropriate procedure for district judges to rely upon when called to handle particularly sensitive documents." *United States v. Al-Farekh*, 956 F.3d 99, 108 (2d Cir. 2020) (discussing Classified Information Procedures Act). Such review can be appropriate where, for example, "there are ongoing investigations into criminal conduct related to the discovery materials" and "public disclosure of some of these materials plausibly could undermine these investigations." *United States v. Smith*, 985 F. Supp.3d 506, 531 (S.D.N.Y. 2013).

A district court's decision to proceed *ex parte* is reviewed for abuse of discretion. *See United States v. Abu-Jihaad*, 630 F.3d 102, 143 (2d Cir. 2010); *United States v. Arillotta*, 529 F. App'x 81, 82 (2d Cir. 2013) (Summary Order).

**2.  The All Writs Act**

The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). This statute "must be read in tandem with the Anti–Injunction Act, which tempers the potency of the All Writs Act by limiting the circumstances under which a federal court may enjoin state court proceedings." *United States v. Schurkman*, 728 F.3d 129, 135 (2d Cir. 2013). The Anti–Injunction Act bars a federal court from enjoining a proceeding in state court unless that action is "'expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'" *Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 425 (2d Cir. 2004) (quoting 28 U.S.C. § 2283). The Anti-Injunction Act "does not bar the United States from seeking a stay of state court proceedings." *Trump v. Vance*, 941 F.3d 631, 638 (2d Cir. 2019) (citing *Leiter Minerals, Inc. v. United States*, 352 U.S. 220 (1957)). *See also In re Grand Jury Subpoena*, 866 F.3d 231, 233 n.2 (5th Cir. 2017) (citing *Leiter Minerals*, 352 U.S. at 225-26; *NLRB v. Nash-Finch Co.*, 404 U.S. 138, 145-47 (1971); *United States v. Lemaire*, 826 F.2d 387, 388 n.2 (5th Cir. 1987)). This is true whether the United States is bringing a criminal action against a defendant, or as an agency with a compelling national interest. *See, e.g., In re Grand Jury Subpoena*, 866 F.3d at 233, n.2.

This Court reviews the issuance of an injunction pursuant to the All Writs Act for abuse of discretion, the district court's factual findings for clear error, and the district court's legal interpretation *de novo*. *See Wyly v. Weiss*, 697 F.3d 131, 137 (2d Cir. 2012) (collecting cases).

**B.    Discussion**

**1. The district court did not abuse its discretion in issuing the injunction, where the Anti-Injunction Act does not apply to suits brought by the United States or, alternatively, the action is permitted under the Anti-Injunction Act as "expressly authorized by Congress."**

The district court acted within its discretion when it enjoined the state court action from proceeding. While the authority of a district court to act pursuant to the All Writs Act is tempered by the Anti-Injunction Act, the Supreme Court has long recognized that suits brought by the United States are excepted from the Anti-Injunction Act. *See e.g., Leiter Minerals, Inc.*, 352 U.S. at 225-26; *Nash-Finch Co.*, 404 U.S. at 145-47 ; *Mitchum v. Foster*, 407 U.S. 225, 236 (1972). And, as the district court correctly noted, no other statute authorized the relief sought by the government. (GA 122-23). *See Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1993) (holding that the All Writs Act "is a residual source of authority to issue writs that are not otherwise covered by statute").

Here, the district court carefully weighed the need for the injunction against the potential harm against Gerace. (GA 125-26). The government had

12

proffered numerous reasons in support of the injunction, including protecting witnesses from threats and intimidation, preserving grand jury secrecy, and enforcing criminal discovery rules. (GA 125). Moreover, the nexus between the state action and the federal criminal case was clear; Gerace's civil complaint even cited ████████ alleged "delivery of false information to the FBI" as one of the grounds for his suit. (CA 35).

Gerace, meanwhile, had waited years to initiate his lawsuit, could not articulate any specific prejudice he would incur as a result of an injunction, and clearly had known of the criminal investigation months before he was named in the indictment, explaining why he may have initiated the civil action when he did. (GA 126). Finally, the district court noted that an alternative statute, 18 U.S.C. § 1514, would be inadequate because it required a public hearing— thereby defeating the point of proceeding *ex parte* and the injunction itself. (GA 122). *Cf. Abu-Jihaad*, 630 F.3d at 143 (in the context of classified information, noting that "an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules" and proceeding *ex parte*) (internal quotation omitted).

Even if the United States is not *per se* exempt from the Anti-Injunction Act, the district court's injunction in this case nevertheless falls under the "expressly authorized by Congress" exception of the Act. 28 U.S.C. § 2283. Such

congressional authorization must create "a specific and uniquely federal right or remedy, enforceable in a federal court of equity, that could be frustrated if the federal court were not empowered to enjoin a state court proceeding." *Mitchum,* 407 U.S. at 237. Here, that authority is found at 18 U.S.C. § 1514, the statute permitting civil actions to restrain harassment of victims and witnesses.

Filing a civil lawsuit against witnesses in a criminal investigation "to avoid the restrictions on criminal discovery and thereby obtain documents that a defendant would not ordinarily be entitled to for use in his criminal case, while at the same time attempting to intimidate a witness from providing accurate information to federal law officials[,] is exactly the kind of harassment [18 U.S.C. § 1514] was designed to eliminate." *United States v. Tison*, 780 F.2d 1569, 1573 (11th Cir. 1986). *See also United States v. Lewis*, 411 F.3d 838, 845 (7th Cir. 2005); *United States v. Dyer*, Case No. 19-cv-1310, 2021 WL 1087122 (E.D. Wis. March 22, 2021). Accordingly, the injunction in this case falls within this exception to the Anti-Injunction Act.

Gerace's claim that the government offered only "conclusory" arguments as to the necessity of the injunction is misplaced. (Gerace Brief, pp. 5-8). The government offered extensive exhibits in support of its motion to enjoin the state court action (*see* DE 115, 182), all of which the district court reviewed in making its decision. The government's proffer at oral argument was as specific as

14

possible without revealing the nature of the materials attached in support of the motion. It would have been counterproductive to proceed *ex parte* in seeking the order, only to turn around and reveal the underlying materials at oral argument on the motion to lift the stay.

Because the district court acted within its discretion, this Court should affirm the decision imposing a temporary injunction on the civil court action.

**2. The district court's decision to hear the motion *ex parte* was appropriate because the motion was supported by grand jury materials.**

The district court was within its discretion to hear the government's motion for an injunction *ex parte* where it was supported by non-public grand jury testimony. (GA 127-28). Attorneys for the government generally are prohibited from disclosing grand jury materials, FED. R. CRIM. P. 6(e)(2)(B)(vi), and the Supreme Court has consistently recognized that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of California v. Petrol Stops N.W.*, 441 U.S. 211, 218 (1979). *See also In re Petition of Craig*, 131 F.3d 99, 101 (2d Cir. 1997) (grand jury secrecy "is older than our Nation itself") (internal quotation omitted). Given the nature of the materials and information supporting the motion, as well as the ongoing nature of the grand jury investigation, the district court's decision to accept the government's motion *ex parte* and under seal was within its discretion.

15

Gerace's citation of *United States v. Abuhamra*, 389 F.3d 309 (2d Cir. 2004) misses the mark. (Gerace Brief, p. 9). First, *Abuhamra* concerned a post-verdict detention order where the government proceeded *ex parte* even though, as the government had conceded, the applicable statute required "some kind of hearing." 389 F.3d at 320-21. Second, *Abuhamra* emphasized the significance of the defendant's direct liberty interest in that the government's *ex parte* proceedings ensured that he was imprisoned pending sentencing. *Id.* at 321-24. Here, by contrast, the applicable statute does not mandate a hearing, the district court's order has no direct effect on Gerace's liberty—it merely temporarily enjoins a civil suit from proceeding while the criminal case is pending—and Gerace had the opportunity to challenge the order before the district court.

As the district court observed, to the extent that any of the *ex parte* materials are subject to disclosure under FED. R. CRIM. P. 16, 18 U.S.C. § 3500, or any other provision of criminal law, Gerace "will receive them at the time dictated by relevant law." (GA 129). Until such time, the district court was within its discretion to review those materials *ex parte* and under seal. This Court should affirm the district court's order.

# CONCLUSION

For the foregoing reasons, this Court should affirm the district court's decision and order.

Dated: July 8, 2022, Buffalo, New York.

Respectfully submitted,

TRINI E. ROSS
UNITED STATES ATTORNEY
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202


By:   s/ *Katherine A. Gregory*
       KATHERINE A. GREGORY
       Assistant United States Attorney
         *Of counsel*

17

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,

    Appellee,           CA # 21-2419-cr

  -v-

JOSEPH BONGIOVANNI, MICHAEL MASECCHIA,

      *Defendants,*

Peter Gerace, Jr.,

    Defendant-Appellant.

   I, KATHERINE A. GREGORY, Assistant United States Attorney for the

Western District of New York, hereby certify that the foregoing brief complies

with this Court's Local Rule 32.1(a)(4)(A) word limitation in that the brief is

calculated by the word processing program to contain approximately 3,350

words, exclusive of the Table of Contents, Table of Authorities and Addendum

of Statutes and Rules.


            s/ *Katherine A. Gregory*
            KATHERINE A. GREGORY
            Assistant U.S. Attorney